UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUANITA STURDIVANT,

        Plaintiff,

v.                                                          Case No. 12-10148
                                                            Honorable Patrick J. Duggan
WESTIN HOTEL MANAGEMENT, d/b/a
STARWOOD HOTEL & RESORTS
WORLDWIDE, INC.,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this action, Plaintiff claims that Defendant violated Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") when it terminated her employment allegedly because she suffered from cancer. Plaintiff's complaint, filed on or about December 13, 2011 in state court and removed to federal court on the basis of diversity jurisdiction on January 12, 2012, includes a single count asserting discrimination in violation of the PWDCRA. Defendant contends that Plaintiff does not qualify as a person with a disability under the statute and that it terminated Plaintiff's employment in any event, not because of her medical condition, but because she repeatedly violated its time and attendance policy.

Presently before the Court is Defendant's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 on November 15, 2012. After receiving an extension of time to do so, Plaintiff filed a response to the motion on January 15, 2013.

Defendant filed a reply on January 28, 2013. This Court has issued a notice informing the parties that it is dispensing with oral argument with respect to Defendant's motion pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons that follow, the Court now grants Defendant's motion.

**I.      Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon

which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513.

## II.     Factual and Procedural Background

In September 2008, Plaintiff was hired to work as a Room Attendant at Defendant's Westin Book Cadillac ("Westin") property in Detroit, Michigan. She remained in this position until her termination in April 2011. Plaintiff was a member of and represented by the Hotel Employees and Restaurant Employees Union, Local 24 during the course of her employment. Plaintiff's job responsibilities included cleaning and resetting guest bedroom and bathroom areas, organizing and stocking cleaning carts, organizing linen closets on assigned floors, and accurately completing assigned paperwork in a timely manner. (Def.'s Mot. Ex. B.) Plaintiff's supervisor throughout her employment was the Director of Housekeeping, Ardis Ogden.

When she was hired, Plaintiff received a copy of Defendant's handbook and time and attendance policy. (Def.'s Mot. Ex. A at 60, 65.) She testified during her deposition in this case that she understood the policy, including that she was subject to discipline up

to and including termination as outlined in the policy. (*Id.*) Defendant's time and attendance policy provides in part:

> **Time & Attendance Policy:** Tardiness, and Time clock punches will be measured in terms of excused or unexcused: An excused absence, or tardiness is one due to the following reasons: personal illness or illness of immediate family member up to 3-days, or validated by a physician's statement after the third day, hospital confinement, occupational injury, jury duty or mandated court subpoena, prearranged and approved leave of absence, death in one's immediate family, natural catastrophe, car trouble if documentation provided is acceptable to employer. **All unreported absences are unexcused** (see below).
>
> An unexcused absence or tardiness is one that is not covered by one of the above excuses. All unreported absences are unexcused. Incidents of absence reported less than two hours before your scheduled shift begins are unexcused. **An unexcused absence or tardiness will be grounds for disciplinary action**.
>
> . . .
>
> **TARDINESS:** Late is defined as [seven (7)][1] minutes late to your work area. ...

(Def.'s Mot. Ex. C, emphasis in original.) The policy outlines the disciplinary action for tardiness and absenteeism:

> **DISCIPLINARY ACTION FOR ACCUMULATED TARDINESS AND ABSENTEEISM (EXCUSED & UNEXCUSED)**
>
> Each of the following shall be considered a "violation" and will result in write-up/disciplinary action:

---

[1] The version of the policy offered by the parties is dated June 22, 2011, and states that an employee is "late" if he or she arrives eight (8) minutes late to his or her work area. (*See* Def.'s Mot. Ex. C; Pl.'s Resp. Ex. 18.) Plaintiff testified at her deposition that the version of the policy in effect during her employment defined late as being seven (7) minutes late to one's work area. (Def.'s Mot. Ex. A at 64-65.)

    1.       3 infractions (tardiness, absenteeism or performance/conduct) in 30-days.
    2.       5 infractions (tardiness, absenteeism or performance/conduct) in 60-days.
    3.       Established negative pattern of tardiness or absenteeism

**FIRST VIOLATION:**    Written verbal warning
**SECOND VIOLATION**:  Written warning
**THIRD VIOLATION**:    Final warning
**FOURTH VIOLATION**: Termination
                            **(all within a rolling 12-month period**)

(*Id*., emphasis in original.)

An addendum to Defendant's handbook also addressed attendance and punctuality.

(*Id*. Ex. E; *see also* Ex. A at 66.)  This document provides in part:

> Consistency in attendance and punctuality are two key character traits of the successful Westin Associate.
>
> However, sometimes unexpected situations arise and events transpire that cause schedule conflicts and delays in transportation.  Should that happen, it is important that you contact your Supervisor as soon as you know that you will be late.  Please notify your Supervisor no later than two (2) hours in advance of your scheduled shift (or longer if required by local policy or practice).  If you are unable to reach your supervisor, leave a message with whomever the General Manager has designated to receive associate calls in the absence of the supervisor. . . .
>
> If proper and timely notification is not made, the absence or tardiness must be considered unexcused for that day. . . .
>
> Continuous unexcused tardiness or absenteeism of any time frame may result in disciplinary action, up to and including termination of employment. . . .

(*Id*. Ex. E.)

Defendant had a process by which an employee could request a switch in scheduled days to allow a requested day off, without using any of the employee's

vacation. Plaintiff was aware of and used this process in 2010 for oral surgery (March 24 and 25 and April 6 and 9), to make a graduation party for her son (June 19), to attend a wedding (July 25), for a court appearance (September 1), for a dentist appointment (November 16), and vacation (November 22 through 28). (Def.'s Mot. Ex. G.) Through this process, Plaintiff also requested days off in 2011 for doctors' appointments (January 26 and February 17). (*Id.*) Ms. Ogden granted each of Plaintiff's requests. (*Id.*)

For most of her employment, Plaintiff was scheduled to being work at 8:30 a.m. According to Defendant, Plaintiff's start time was moved to 8:45 a.m. in October 2010, effective November 7, 2010. (Def.'s Mot. Ex. I.) According to Ms. Ogden, this adjustment was made to accommodate Plaintiff's reported need for more time to transport her son to school in the morning. (*Id.* Ex. H ¶ 4.) But Plaintiff testified during her deposition that this document was incorrect and her start time did not change at this point. (Def.'s Mot. Ex. A at 76.) Plaintiff and Defendant agree, however, that on January 19, 2011, Plaintiffs' schedule was adjusted to move her start time to 9:00 a.m. (*Id.*; Ex. J.) Ms. Ogden states in an affidavit that Plaintiff requested this later start time because her move to Canton from Detroit made her commute to work longer. (*Id.* Ex. H ¶ 5.)

Defendant's warnings to Plaintiff concerning her tardiness and/or absences began in December 2010. During that month, Plaintiff was tardy on three occasions as follows: 12/1/10 arriving at 9:14 a.m.; 12/4/10 arriving at 10:19 a.m.; and 12/10/10 arriving at 9:25 a.m. (Def.'s Mot. Ex. K; Ex. S.) Defendant issued a written "verbal warning" to Plaintiff on December 14, 2010, which she signed. (*Id.* Ex. L.) Plaintiff committed three

additional infractions of Defendant's time and attendance policy in January 2011: a tardy arrival (10:19 a.m.) on 1/2/11; a "call off" on 1/8/11; and a tardy arrival (9:26 a.m.) on 1/21/11. (Def.'s Mot. Ex. M; Ex. S.) Defendant therefore issued a first written warning to Plaintiff on January 25, 2011, which she signed. (*Id*. Ex. N.)

On March 23, 2011, Defendant issued Plaintiff a second written warning due to her accumulation of four additional attendance infractions within thirty days, including three tardy arrivals on February 25 (arriving at 9:15 a.m.), March 16 (arriving at 9:35 a.m.), and March 18 (arriving at 9:18 a.m.), and a call off on March 22. (Def.'s Mot. Ex. M; Ex. O; Ex. S.) Defendant issued a final written warning to Plaintiff on April 26, 2011, due to tardy arrivals on March 23 (9:56 a.m.), March 24 (9:13 a.m.), April 6 (9:18 a.m.), and April 14 (9:12 a.m.). (*Id*. Ex. M; Ex. Q; Ex. S.) Plaintiff indicated that her tardiness on April 6 was due to her taking her son to school, and that her April 14 tardiness resulted from having to pick up her car from the mechanic. (*Id*. Ex. Q; *see also id*. Ex. A at 86.) When Plaintiff accumulated two additional attendance infractions on April 24 (arriving at 10:22 a.m.) and April 27 (calling off), Defendant terminated her employment. (*Id*. Ex. M; Ex. S.) The decision to terminate Plaintiff was made by Defendant's Human Resources Coordinator, Darlene Jackson, and its Director of Human Resources, Diane Tunstall. (*Id*. Ex. F ¶ 3; Ex. T ¶ 2.)

On April 28, 2011, Plaintiff filed a grievance with respect to her termination. (Def.'s Mot. Ex. U.) Prior to this action, she had neither complained about the warning she had received, contended that her unexcused absences or tardy arrivals should have

been excused, nor offered explanations for most of the infractions. On May 4, 2011, Plaintiff, her union representative, Ms. Jackson, and Ms. Tunstall met to discuss Plaintiff's termination and grievance. As a result of that meeting, Plaintiff was offered a "Last Chance Agreement" which provided that Westin had cause to discharge Plaintiff under its time and attendance policy but would rehire Plaintiff if *inter alia* she provided Defendant, within 90 days of the signed agreement, a doctor's note releasing her to work without restrictions. (*Id*. Ex. W.)

Plaintiff and her union representative signed the agreement on June 28, 2011, and Ms. Tunstall signed the agreement on behalf of Defendant on July 6, 2011. Plaintiff, however, never presented Defendant with the required doctor's note and there is no evidence that she had any contact with Defendant after her surgery in May 2011 about resuming her employment. Ms. Tunstall contacted Plaintiff's union representative regarding Plaintiff on several occasions between July 6 and October 4, 2011, but was told the union had not heard from Plaintiff since she signed the Last Chance Agreement. (Def.'s Mot. Ex. F ¶ 9.) Apparently, Plaintiff was not cleared to work until November or December 2011, and was subjected to restrictions that prevent her from performing the Room Attendant position at the Westin. (Def.'s Mot. Ex. A at 25-28.)

As indicated previously, Plaintiff initiated this lawsuit against Defendant on or about December 13, 2011, alleging that her termination was in violation of the PWDCRA. Plaintiff claims that she became ill around the time that her tardy arrivals and absences started to accumulate and then was diagnosed with and was being treated for

sarcoma cancer on her right lung. Plaintiff believes that, due to her condition and need for medical appointments and testing to address her condition, her absences and tardiness should have been considered excused. In response to Defendant's motion for summary judgment, she submits records reflecting the various doctors' appointments and testing she underwent between January and April 2011, as well as trips to the emergency room. (Pl.'s Resp. Exs. 1, 3, 5, 6-9, 11-12, 14-15, 19.)

Plaintiff asserted during her deposition in this case and states in an affidavit submitted in response to Defendant's motion that Ms. Ogden was aware of her condition as early as December 2010 when she first began feeling ill. (*See, e.g.*, Def.'s Mot. Ex. A at 51-52, 66-67, 104-06; Pl.'s Resp. Ex. 20.) Plaintiff testified and restates in her affidavit that she informed Ms. Ogden of her cancer diagnosis on or about the same day that she received the diagnosis. (Def.'s Mot. Ex. A at 104-05; Pl.'s Resp. Ex. 20 ¶¶ 22-23.) Ms. Ogden denies knowing about Plaintiff's illness or cancer diagnosis until the day the termination decision was communicated to Plaintiff by Human Resources. (Def.'s Mot. Ex. H ¶ 9.) Ms. Jackson and Ms. Tunstall also claim to have had no knowledge of Plaintiff's illness or cancer diagnosis prior to or at the time they decided to terminate her. (*Id.* Ex. F ¶ 3; Ex. T ¶ 2.)

## III. Applicable Law and Analysis

Absent direct evidence of disability discrimination, as is the case here, a court must evaluate a plaintiff's claims under the PWDCRA by applying the familiar burden-shifting test established by the United States Supreme Court in *McDonnell Douglas*

*Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462, 628 N.W.2d 515, 520-21 (2001). First, the plaintiff must establish a *prima facie* case of discrimination by presenting evidence that: (1) she is disabled as defined by the act or that the defendant regarded her as disabled; (2) the alleged disability is unrelated to her ability to perform the job; and (3) she was discriminated against in one of the ways described by the statute, such as being discharged because of a disability.[2] *Lown v. JJ Eaton Place*, 235 Mich. App. 721, 727, 598 N.W.2d 633, 636 (1999); *Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 473-75, 606 N.W.2d 398, 405-06 (1999). If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for its employment decision. *Hazle*, 464 Mich. at 464, 628 N.W.2d at 521. If the defendant sets forth such a reason, to survive summary judgment, "the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.'" *Id*. at 465, 625 N.W.2d at 522 (quoting *Lytle v. Malady*, 458 Mich. 153, 176, 579 N.W.2d 906, 916 (1998)).

Defendant argues that is entitled to summary judgment because Plaintiff is not disabled, as that term is defined under the PWDCRA. Specifically, Defendant contends that Plaintiff was not able to return to work until November or December 2011, and then

---

[2] Mich. Comp. Laws § 37.1202 sets forth the conduct prohibited by an employer based on an individual's disability.

her ability to work was subject to restrictions that render her incapable of performing the Room Attendant position. Defendant also argues that even if Plaintiff is disabled, she cannot establish that she was terminated because of her disability. Finally, Defendant argues that even if Plaintiff can establish a *prima case* of disability discrimination, there was a legitimate, non-discriminatory reason for her termination– i.e. her 32 violations of Westin's time and attendance policy within the preceding 90 days. Defendant contends that Plaintiff cannot show that this reason was a pretext for discrimination.

     **A.**     **Whether Plaintiff is a person with a disability**

As relevant to Defendant's motion, the PWDCRA defines "disability" as:

(*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

  . . .

Mich. Comp. Laws § 37.1103(d). In its motion, Defendant contends that Plaintiff does not fall within the PWDCRA's protections because she cannot perform the essential functions of the Room Attendant position, with or without accommodation, due to her work restrictions, specifically her inability to lift over ten pounds, perform strenuous tasks, and be exposed to certain fumes. (Def.'s Br. in Supp. of Mot. at 11.) The problem with this argument, as Plaintiff points out in response, is that these restrictions were not in

place and Plaintiff was not so limited in her abilities while she was working for Defendant. It was only after she was terminated and underwent surgery that Plaintiff's doctor imposed these work restrictions.

Perhaps recognizing this weakness in its argument, Defendant instead argues in its reply brief that Plaintiff is not disabled under the PWDCRA because her "disability is related to her ability to perform the essential duties of her job", specifically punctual and regular attendance. (Def.'s Reply Br. at 2, 11.) Defendant maintains that compliance with its time and attendance policy is an essential function of the Room Attendant position. (*Id*.) Because Defendant raised this argument for the first time in its reply brief, the Court does not believe it should be considered. *Resolution Trust Corp. v. Townsend Assoc. Ltd. P'ship*, 840 F. Supp. 1127, 1142 n.15 (E.D. Mich. 1993) ("[I]t is well-settled that a party may not raise new issues for the first time in a reply brief") (citing *United States v. Jenkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989)). In any event, the Court finds at least two flaws in Defendant's argument.

First, while Defendant now maintains that Plaintiff's "disability is related to her ability to perform the essential duties of her job", it has presented no evidence to show that Plaintiff's attendance problems were in fact a result of her illness. As this Court understood the arguments in Defendant's initial pleading, it in fact was trying to convince the Court of just the opposite– i.e., that Plaintiff was tardy and absent for reasons having nothing to do with her illness, such as getting her son to school, the long commute from Canton, or attending a concert the night before her work shift.

Next, the Sixth Circuit Court of Appeals and Michigan Court of Appeals have recognized that an employee who cannot meet the attendance requirements of his or her job, where those requirements are an essential function of the job, cannot be considered a person with a disability.  *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418-19 (6th Cir. 2004); *Kancik v. Greenwood Twp.*, No. 294271, 2011 WL 92980, at *3 (Mich. Ct. App. Jan. 11, 2011) (unpublished).  Nevertheless, the employer must show that the employee's failure to meet its attendance requirements imposed an undue burden upon it and this is something Defendant has not done.  *See Brenneman*, 366 F.3d at 419 (citing *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781-82 (6th Cir. 1998)); *see also Webb v. Humana, Inc.*, 819 F. Supp. 2d 641, 647-78 (W.D. Ky. 2011) (distinguishing *Brenneman* because the "Defendants neither criticize [the plaintiff's] job performance nor claim an undue burden by allowing him additional leave for his cancer-related absences.")  Defendant fails to present evidence to show that Plaintiff's tardiness and occasional call offs prevented her from satisfactorily performing her job duties or imposed an undue burden on it.

For the above reasons, Defendant fails to convince the Court that Plaintiff is not "disabled" under the PWDCRA.

### B. Whether Plaintiff can show that she was terminated because of her alleged disability

Defendant argues that Plaintiff is estopped from claiming a connection between her discharge and disability because she signed the Last Chance Agreement, thereby

13

acknowledging that Defendant had cause for the discharge based on her violation of its time and attendance policy. In addition to stating that Defendant "had cause to discharge" her under its "conditions of employment," the Last Chance Agreement includes language indicating that Plaintiff read it, had the opportunity to review it with her union representative, and entered it knowingly and voluntarily. (Def.'s Mot. Ex. W.) Plaintiff responds that (1) the agreement is a "self-serving" document created by Defendant; (2) nothing within the document reflects an admission by Plaintiff that she agrees that Defendant had cause to terminate her; (3) she never received a copy of the agreement signed by Defendant; and, (4) Plaintiff understood that she would receive retroactive reinstatement of her insurance benefits when in fact they were not reinstated. (Pl.'s Resp. Br. at 17.) Plaintiff also cites Michigan law requiring courts to construe ambiguous language in a contract in a light most favorable to the party who did not draft it. (*Id*. at 18.)

      This Court finds nothing ambiguous about the language of the Last Chance Agreement. The agreement is plainly and clearly written. It unambiguously states that Defendant had cause to terminate Plaintiff for violation of its time and attendance policy and Plaintiff indicated her assent to this statement by signing the agreement. Nothing in the agreement suggests that Defendant promised to retroactively reinstate Plaintiff's benefits, much less that it was obligated to do so if she never satisfied the condition precedent to be able to return to work nor returned to work.

      Plaintiff cites no authority holding that an agreement is invalid or unenforceable if

14

one party does not receive a copy signed by all parties and the Last Chance Agreement did not make this a requirement to form a valid contract. Finally, the Court is at a loss to understand why Plaintiff believes the agreement is "self-serving" or, if it is, how this affects its enforceability. To the extent Plaintiff is trying to argue that the Last Chance Agreement lacks consideration– i.e., a bargained-for-exchange between the parties– this is incorrect. In exchange for receiving a second chance to keep her job, Plaintiff agreed that her termination was justified. But even if Plaintiff is not estopped from arguing that she was terminated because of her alleged disability based on the Last Chance Agreement, this Court agrees with Defendant that Plaintiff lacks evidence to raise an issue of fact as to whether she was terminated because of her disability rather than the reason proffered by Defendant.

    First, while Plaintiff presents evidence to create a question of fact as to whether Ms. Ogden was aware of her cancer diagnosis, she offers no evidence to suggest that Ms. Jackson or Ms. Tunstall– the ultimate decision makers– were aware of her condition. Second, Plaintiff fails to rebut Defendant's evidence that four, non-disabled employees who reported to Ms. Ogden also were terminated due to attendance problems and the progressive discipline system in a time period relevant to Plaintiff's termination. (Def.'s Br. in Supp. of Mot. at 4 & n.1; Ex. H ¶ 15.) Plaintiff additionally has not challenged Defendant's records reflecting that she was tardy or absent on the days for which she was disciplined. Plaintiff argues that Defendant should have excused her tardy arrivals and absences because they were related to her illness; however, there are several problems

with Plaintiff's argument.

First, the medical documents Plaintiff submits in response to Defendant's motion correspond to only two of the sixteen tardy arrivals or call offs cited by Defendant. (*See* Pl.'s Resp. Ex. 12 (documentation reflecting 3/16/11 PET/CT scan); Ex. 11 (document reflecting doctor's appointment on 3/22/11). On only one other date relied on by Defendant does Plaintiff claim to have been at a doctor's appointment. (*Id*. Ex. 20 ¶ 29.) Regardless, the plain and unambiguous terms of Defendant's time and attendance Policy provide that an absence or tardiness will be considered unexcused unless "reported less than two hours before [the employee's] scheduled shift begins . . .." (Def.'s Mot. Ex. C; Ex. E.) The policy defines an "excused absence" or "tardiness" as one due *inter alia* to personal illness, but clearly states after the definition that "**[a]ll unreported absences are unexcused**". (*Id*. Ex. C; *see also* Ex. E ("If proper and timely notification is not made, the absence or tardiness must be considered unexcused for that day").) Moreover, the policy does not include doctor's appointments or medical testing without a prearranged and approved leave of absence as excused absences. (*See id*.) The Court also notes that Plaintiff never complained to Defendant at any time before her termination that her absences and tardy arrivals should have been deemed excused under the time and attendance policy.

Plaintiff falls back on the timing (14 days) between her termination and the date she was scheduled for surgery to address her cancer to demonstrate the needed connection to show discrimination under the PWDCRA. However, on its own, proximity in time

does not establish pretext. *Donald v. Sybea, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001)). Moreover, this argument ignores that Defendant disciplined Plaintiff for violations of the time and attendance policy several months before she was even diagnosed with cancer.

In short, Plaintiff fails to create a genuine issue of material fact with respect to whether she was terminated because of her alleged disability.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is **GRANTED**.

Dated: March 12, 2013                    s/PATRICK J. DUGGAN
                                         UNITED STATES DISTRICT JUDGE

Copies to:
Ivie Jonathan Shelton, Esq.
Richard M. Tuyn, Esq.
Donelle R. Buratto, Esq.